THOMAS P. O'BRIEN
United States Attorney
ROBB C. ADKINS
Assistant United States Attorney
Chief, Santa Ana Branch Office
GREGORY W. STAPLES
Assistant United States Attorney
California Bar Number: 155505
IVY A. WANG
Assistant Unites States Attorney
California Bar Number: 224899
        United States Courthouse
        411 West Fourth Street, Suite 8000
        Santa Ana, California 92701
        Telephone: (714) 338-3549
        Facsimile: (714) 338-3561
        E-mail address: ivy.wang@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. SA CR 08-024-CJC |
| | ) |
| Plaintiff, | ) GOVERNMENT'S OPPOSITION TO |
| | ) DEFENDANT'S MOTION TO DISMISS; |
| | ) EXHIBITS |
| v. | ) |
| | ) Date: April 13, 2009 |
| | ) Time: 9:00 a.m. |
| DONGFAN "GREG" CHUNG, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

    The government submits its opposition to defendant's Motion

to Dismiss Counts 1 through 9 of the Indictment ("Motion to

Dismiss").

Dated: March 30, 2009

                        _____
                        GREGORY W. STAPLES
                        IVY A. WANG
                        Assistant United States Attorneys

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . .   ii

I.  INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . .   1

II. STATEMENT OF FACTS.. . . . . . . . . . . . . . . . . . . .   2

III.  LEGAL STANDARDS.. . . . . . . . . . . . . . . . . . . .   4

      A.   The Motion to Dismiss.. . . . . . . . . . . . . . .   4

      B.   The EEA. . . . . . . . . . . . . . . . . . . . . .   6

IV.  ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . .   10

      A.   The EEA's References to "Not Generally Known"
           and "Not Readily Ascertainable Through Proper
           Means" Are Not Unconstitutionally Vague.. . . . . .   11

      B.   The EEA's Reference to "Reasonable Measures"
           Taken to Protect Trade Secrets Is Not
           Unconstitutionally Vague. . . . . . . . . . . . . .   14

      C.   The EEA's Reference to "Independent Economic
           Value" Is Not Unconstitutionally Vague. . . . . . .   16

      D.   The EEA Presents No Danger of Arbitrary
           Enforcement.. . . . . . . . . . . . . . . . . . . .   18

      E.   Section 371 Is Not Unconstitutionally Vague.. . . .   19

VI.  CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . .   20

TABLE OF AUTHORITIES

PAGE

CASES:

BBA Nonwovens Simpsonville, Inc. v. Superior Nonwovens, LLC,
     303 F.3d 1332 (Fed. Cir. 2002). . . . . . . . . . . . . . .   9

Buffets, Inc. v. Klinke,
     73 F.3d 965 (9th Cir. 1996). . . . . . . . . . . . . . . .   9

Cheek v. United States,
     498 U.S. 192 (1991). . . . . . . . . . . . . . . . . . . .   5

DeBartolo Corp. v. Florida Gulf Coast Building and Trades Council,
     485 U.S. 568 (1988). . . . . . . . . . . . . . . . . . . .   5

Flemming v. Nestor,
     363 U.S. 603 (1960). . . . . . . . . . . . . . . . . . . .   5

Hamling v. United States,
     418 U.S. 87 (1974). . . . . . . . . . . . . . . . . . . .   6

Harvey Barnett, Inc. v. Shidler,
     338 F.3d 1125 (10th Cir. 2003). . . . . . . . . . . . . .   9

Hess v. Board of Parole,
     514 F.3d 909 (9th Cir. 2008). . . . . . . . . . . .   6, 13

Hotel & Motel Association of Oakland v. City of Oakland,
     344 F.3d 959 (9th Cir. 2003). . . . . . . . . . . . . . .   6

Kolender v. Lawson,
     461 U.S. 352 (1985). . . . . . . . . . . . . . . . . . . .   5

Metallurgical Industries, Inc. v. Fourtek,
     790 F.2d 1195 (5th Cir. 1986). . . . . . . . . . . . . . .   9

Servo Corporation of America v. General Electric Company,
     393 F.2d 551 (4th Cir. 1968). . . . . . . . . . . . . . .   9

Syntex Opthalmics, Inc. v. Tsuetaki,
     701 F.2d 677 (7th Cir. 1983). . . . . . . . . . . . . . .   9

United Stated v. Williams,
     128 S. Ct. 1830 (2008). . . . . . . . . . . . . . . .   6, 18

United States v. Genovese,
     409 F. Supp. 2d 253 (S.D.N.Y. 2005). . . . . . . . . .   12, 15

United States v. Hsu,
     40 F. Supp. 2d 623 (E.D. Penn. 1999). . . . . . . . . . passim

TABLE OF AUTHORITIES (CONTINUED)

PAGE

United States v. Hsu,
     155 F.3d 189 (3d Cir. 1998). . . . . . . . . . . . 6, 7, 9

United States v. Jae Gab Kim,
     449 F.3d 933 (9th Cir. 2006). . . . . . . . . . 6, 10, 13

United States v. Krumrei,
     258 F.3d 535 (6th Cir. 2001). . . . . . . . . . 4, 14, 15

United States v. National Dairy Products Corp.,
     372 U.S. 29 (1963). . . . . . . . . . . . . . . . . . 4

United States v. Nippon Paper Industries,
     109 F.3d 1 (1st Cir. 1997). . . . . . . . . . . . . . 4

United States v. Schales,
     546 F.3d 965 (9th Cir 2008). . . . . . . . . . . 5, 6, 18

Vermont Microsystems, Inc. v. Autodesk, Inc.,
     88 F.3d 142 (2d Cir. 1996). . . . . . . . . . . . . . 9

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
     455 U.S. 489 (1982). . . . . . . . . . . . . . . . . 10

STATUTES:

18 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1251(b)(3). . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1831. . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 371. . . . . . . . . . . . . . . . . . . 2, 19

18 U.S.C. § 922(d)(8). . . . . . . . . . . . . . . . . 14

18 U.S.C. § 951. . . . . . . . . . . . . . . . . . . . 2

MISCELLANEOUS:

H.R. Rep. 104-778 (1996). . . . . . . . . . . . . . . . 9

iii

# I. INTRODUCTION

The definition of trade secret in the Economic Espionage Act is not unconstitutionally vague.  First, defendant is charged with violating 18 U.S.C. § 1831, which contains a double scienter requirement that a defendant (1) knowingly take a trade secret (2) knowing that it will benefit a foreign government.  The Supreme Court and the Ninth Circuit have routinely rejected vagueness challenges to statutes with a scienter requirement, because such a requirement lessens concern that a defendant will not be on notice of the proscribed conduct.  Second, a challenge for vagueness in a statute that does not implicate the First Amendment is tested "as applied" to the facts of the case before the court.  A number of courts have already upheld vagueness challenges to some of the terms defendant challenges.  Defendant fails to cite to any specific facts in this case that would establish a vagueness problem.  Defendant cannot overcome the strong presumption of constitutional validity that attaches to statutes by engaging in speculation and general arguments about the possible uncertainty of terms.

On the contrary, the facts of this case prove that defendant, an engineer with a secret clearance at Rockwell and Boeing for more than thirty years, knew that he was taking restricted information in response to requests from the government of the People's Republic of China.  Accordingly, defendant's Motion to Dismiss should be denied.  (At the status conference on March 26, 2009, defendant withdrew his motion to strike surplusage so that motion is not addressed here.)

////

## II.   STATEMENT OF FACTS

Defendant is charged with conspiracy to commit economic espionage in violation of 18 U.S.C. § 371.  <u>See</u> Indictment, attached as Exhibit 1.  Counts 2 through 9 of the Indictment charge defendant with economic espionage to benefit a foreign country in violation of 18 U.S.C. § 1831, the Economic Espionage Act ("EEA").  Count 10 charges defendant with acting as an agent of the People's Republic of China ("PRC") in violation of 18 U.S.C. § 951.  Count 11 charges defendant with obstructing justice in violation of 18 U.S.C. § 1251(b)(3).  Counts 12 through 14 charge defendant with making false statements to the FBI in violation of 18 U.S.C. § 1001.  Count 15 is a criminal forfeiture allegation that would only have effect upon conviction for economic espionage.

Counts 1 through 9, which defendant seeks to dismiss, are based on defendant's unauthorized taking, possession, and concealment in his home of documents containing trade secrets belonging to his employer, The Boeing Company ("Boeing"), with the intent to benefit the PRC.  Defendant worked at Rockwell International ("Rockwell"), and later Boeing when it acquired Rockwell's space division, from 1973 to 2002 as a stress analyst on the forward fuselage section of the Space Shuttle.  Indictment ¶ 10.  Defendant returned to work as a contractor at Boeing from March 2003 to September 2006.  <u>Id.</u> at ¶ 11.

The charged documents contain trade secrets pertaining to Boeing's Space Shuttle program, in which defendant worked, and Boeing's Delta IV rocket and C-17 military cargo plane programs, in which defendant did not work.  Indictment ¶¶ 5, 7, 9.  Only

1  Boeing employees who worked in these programs and had a need to
2  know were authorized to have access to these documents.  Id. at
3  ¶¶ 4, 6, 8.  The Indictment charges defendant with possessing
4  eight documents containing trade secrets, five of which bore
5  restrictive markings.

6       The documents were responsive to requests for specific types
7  of technology that defendant had received from PRC government
8  officials in the past.  Indictment ¶ 22.  One letter indicated
9  that defendant was paid for providing information to the PRC,
10  suggested "cover stories" for his travel to the PRC, and advised
11  giving information to Chi Mak as a "faster and safer" channel for
12  sending information to the PRC.  Indictment ¶ 22.n.  The letter
13  concludes, "It is your honor and China's fortune that you are
14  able to realize your wish of dedicating yourself to the service
15  of your country."  Id.

16       From 1973 to 2002, defendant held a secret clearance.
17  Indictment ¶ 13.  As a condition of his secret clearance and his
18  employment at Rockwell and Boeing, defendant was required to
19  report any foreign travel, contacts with foreign officials, and
20  any planned disclosure of company information in a foreign
21  country.  Id.  Despite this, defendant gave lectures on the Space
22  Shuttle and other programs in the PRC beginning in 1985 that he
23  did not disclose to Rockwell or Boeing.  Indictment ¶ 21.d.

24       During his employment at Boeing, defendant signed numerous
25  agreements stating that he would not use or disclose without
26  authorization any proprietary, confidential, or trade secret
27  information belonging to Boeing.  Indictment ¶¶ 14-18.  When
28  defendant left Boeing the first time in 2002, he signed a

statement that he had returned to Boeing "all documents, computer software or databases, and other materials or items which at the time of the termination of my employment were in my possession, custody, or control by virtue of my employment with Boeing." Indictment ¶ 15.  At trial, the government will show that defendant had more than 250,000 pages of documents relating to aerospace and defense technology in his home.

Defendant is charged with obstruction of justice for persuading his son to tell FBI agents that he could remember nothing of a trip the Chungs took to the PRC in 1985 where they met with Gu Weihao, an official with the PRC's Ministry of Aviation.  Indictment ¶ 28.  Defendant is also charged with false statements for lying to FBI agents about reporting his travel to the PRC to Boeing, lying about the number of trips he took to the PRC, and lying about having authorization to taking Boeing documents home.

**III.  LEGAL STANDARDS**

    **A.    The Motion to Dismiss**

Allegations of an indictment are accepted as true on a motion to dismiss.  United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 33, n.2 (1963); United States v. Nippon Paper Industries, 109 F.3d 1, 2 (1st Cir. 1997).  Defendant bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation.  United States v. Krumrei, 258 F.3d 535, 537 (6th Cir. 2001).

A party challenging the constitutionality of a statute bears a heavy burden.  A presumption of validity attaches to the acts

4

of Congress, and courts are required to interpret statutes in favor of finding them constitutional. "It is common ground that [the Supreme Court], where possible, interprets enactments so as to avoid raising serious constitutional questions." Cheek v. United States, 498 U.S. 192, 203 (1991) citing DeBartolo Corp. v. Florida Gulf Coast Building and Trades Council, 485 U.S. 568, 575 (1988)("every conceivable construction must be resorted to, in order to save a statute from unconstitutionality").

> The presumption of constitutionality with which [a statute] comes to us forbids us lightly to choose that reading of the statute's setting which invalidates it over that which will save it . . . it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void.

Flemming v. Nestor, 363 U.S. 603, 617 (1960).

> "To avoid being unconstitutionally vague, a penal statute must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" United States v. Schales, 546 F.3d 965, 972 (9th Cir 2008) citing Kolender v. Lawson, 461 U.S. 352, 357 (1985).

> The Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . perfect clarity and precise guidance have never been required even of

5

1      regulations that restrict expressive activity.

2 Schales, 546 F.3d at 972, citing Hamling v. United States, 418

3 U.S. 87, 111 (1974) and United Stated v. Williams, 128 S.Ct.

4 1830, 1845 (2008).

5      When challenging a statute that does not implicate the First

6 Amendment, as defendant does here, a party must "demonstrate that

7 the enactment is impermissibly vague in all of its applications."

8 Hess v. Board of Parole, 514 F.3d 909, 913 (9th Cir. 2008) citing

9 Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959,

10 972 (9th Cir. 2003).  As a matter of practice, defendant must

11 show that the statute is vague as applied to him.  If the statute

12 is not vague as applied to defendant, it cannot be vague in all

13 of its applications and no further inquiry is required.  Hess,

14 514 F.3d at 913.  Therefore, a challenge to the vagueness of a

15 statute "must be examined as applied to the defendant."  United

16 States v. Jae Gab Kim, 449 F.3d 933, 942 (9th Cir. 2006).

17      "What renders a statute vague is not the possibility that it

18 will sometimes be difficult to determine whether the

19 incriminating fact it establishes has been proved, but rather the

20 indeterminacy of precisely what that fact is."  Williams, 128

21 S.Ct. at 1846.  In assessing the clarity of the statute, courts

22 may look to "statutory definitions, narrowing context, or settled

23 legal meanings," and may also consult the legislative history.

24 Id. at 1846 and 1847 (J. Stevens concurring).

25    **B.  The EEA**

26      Congress passed the EEA in 1996 "against a backdrop of

27 increasing threats to corporate security and a rising tide of

28 international and domestic economic espionage."  United States v.

Hsu, 155 F.3d 189, 194 (3d Cir. 1998).  It was enacted to close a gap in federal law that made it difficult to prosecute the theft of trade secrets, conduct that frequently crossed state and international boundaries.  Id.

Title 18, United States Code, Section 1831 states the following:

(a) In general.  Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly–

(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret;

(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret;

(3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

(4) attempts to commit any offense described in any of paragraphs (1) through (3); or

(5) conspires with one or more other persons to commit any offense described in any of paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy,

shall, except as provided in subsection (b), be fined not more than $500,000 or imprisoned not more than 15 years, or both.

7

The elements of the crime are as follows:

1.    The defendant intended or knew his actions would
      benefit a foreign government, foreign instrumentality,
      or foreign agent;

2.    The defendant knowingly stole, or without authorization
      appropriated, took, carried away, or concealed, or by
      fraud, artifice, or deception obtained a trade secret;
      and;

3.    The information was, in fact, a trade secret.

18 U.S.C. § 1831(a)(1).

Section 1839(3) defines "trade secret" and "owner" as
follows:

(3) the term "trade secret" means all forms and types of
financial, business, scientific, technical, economic, or
engineering information, including patterns, plans,
compilations, program devices, formulas, designs,
prototypes, methods, techniques, processes, procedures,
programs, or codes, whether tangible or intangible, and
whether or how stored, compiled, or memorialized physically,
electronically, graphically, photographically, or in writing
if—

      (A) the owner thereof has taken reasonable measures to
      keep such information secret; and

      (B) the information derives independent economic value,
      actual or potential, from not being generally known to,
      and not being readily ascertainable through proper
      means by, the public; and

(4) the term "owner," with respect to a trade secret, means

1  the person or entity in whom or in which rightful legal or

2  equitable title to, or license in, the trade secret is

3  reposed.

4  The EEA's definition of trade secret is based on the definition

5  of trade secret in the Uniform Trade Secrets Act ("UTSA").  See

6  H.R. Rep. 104-778, at 12 (1996), attached as Exhibit 2.  The UTSA

7  has been adopted in some form in forty-four states and the

8  District of Columbia.  Hsu, 155 F.3d at 195, n.7.  As a result,

9  in most instances civil cases involving the USTA can provide

10  guidance in interpreting the EEA.

11  The government need only prove that the defendant intended

12  that his actions in taking or otherwise controlling the trade

13  secret would benefit a foreign government in any way.  The term

14  "benefit" may be an "economic, reputational, strategic, or

15  tactical benefit."  Ex. 2, H. Rep. No. 104-788, at 11.

16  Information can be a trade secret even if some of its

17  components are in the public domain, provided that some elements

18  of the information have independent economic value due to their

19  not being widely known, and the owner of the information has

20  taken reasonable steps to protect the elements of the information

21  that are not widely known.  Buffets, Inc. v. Klinke, 73 F.3d 965,

22  968 (9th Cir. 1996); Harvey Barnett, Inc. v. Shidler, 338 F.3d

23  1125, 1129 (10th Cir. 2003); BBA Nonwovens Simpsonville, Inc. v.

24  Superior Nonwovens, LLC, 303 F.3d 1332, 1339 (Fed. Cir. 2002);

25  Vermont Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142, 147

26  (2d Cir. 1996); Metallurgical Industries, Inc. v. Fourtek, 790

27  F.2d 1195, 1201 (5th Cir. 1986); Syntex Opthalmics, Inc. v.

28  Tsuetaki, 701 F.2d 677, 684 (7th Cir. 1983); Servo Corporation of

9

1  <u>America v. General Electric Company</u>, 393 F.2d 551 (4th Cir.
2  1968).

3       As discussed below, the EEA is not vague because it clearly
4  states the facts to be determined for a trade secret: information
5  which (1) has economic value to its owner from the fact that it
6  is not widely known or easily replicated by proper means, and (2)
7  for which the owner has taken reasonable steps to protect.

8  **IV.  ARGUMENT**

9       Before considering the specific challenges made by
10 defendant, it should be noted that the scienter requirement in
11 § 1831 usually defeats a claim of vagueness.  "[A] scienter
12 requirement may mitigate a law's vagueness, especially with
13 respect to the adequacy of notice to the complainant that his
14 conduct is prohibited." <u>Jae Gab Kim</u>, 449 F.3d at 943, citing
15 <u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>,
16 455 U.S. 489, 499 (1982); <u>United States v. Hsu</u>, 40 F.Supp.2d at
17 631, n. 8.  In the case of Section 1831,[1] there is a double
18 scienter requirement: a defendant must (1) knowingly steal a
19 trade secret (2) knowing that it will benefit a foreign
20 government.  Therefore, defendant can only be convicted if the
21 government proves beyond a reasonable doubt that (1) defendant
22 knew he was taking trade secrets, and (2) knew he was doing it
23 for the benefit of a foreign government.
24 ////

25
26      [1]  <u>Hsu</u> dealt with § 1832, which is theft of a trade secret
   where the intent is not to benefit a foreign country, but to
27 benefit another party, such as a competitor, to the detriment of
   the owner of the trade secret.  Both § 1831 and § 1832 use the
   definition of trade secret in § 1839.  Thus the analysis of the
28 definition of trade secret with respect to § 1832 applies to
   § 1831.

A.    **The EEA's References to "Not Generally Known" and "Not Readily Ascertainable Through Proper Means" Are Not Unconstitutionally Vague**

As set forth above, a statute is tested for vagueness by applying it to the facts of case. Here, a person of reasonable intelligence in defendant's position would know that the Boeing documents he stole were not generally known or readily ascertainable through proper means, in part due to the steps Boeing took to protect the documents. Defendant was an insider with a secret clearance at Rockwell and Boeing since 1973. He signed agreements to protect and not disclose without authorization Boeing's proprietary information. He stole documents bearing stamps indicating that the information belonged to Boeing. Defendant was aware that access to documents at Boeing was restricted to engineers working on a given program who had a need to know. Finally, defendant lied about having permission to take the documents to his home. Although the government will produce far more evidence at trial regarding the steps Boeing took to protect its information, and defendant's knowledge of those steps, the facts set forth in the Indictment show that defendant was aware he was taking without authorization information that did not belong to him.[2]

One court, dealing with fewer adverse facts than presented

---

[2]    At trial the government will offer more evidence regarding defendant's knowledge regarding the secrecy of the documents, including the fact that defendant had received training on trade secrets and export controls while at Boeing. The government will also present evidence showing the physical security at the Boeing plant where defendant worked, which included restricted access, compartmentalization of work, and separate shared computer drives that were password-protected for different work projects.

here, denied a defendant's motion to dismiss due to vagueness of
the terms "not generally known" and "reasonable means" in the
EEA.  In <u>United States v. Genovese</u>, 409 F.Supp.2d 253 (S.D.N.Y.
2005), the defendant found a portion of Microsoft source code on
the Internet and immediately offered to sell it, describing it as
"jacked," and claiming that others would have a hard time finding
it.  409 F.Supp.2d at 257.  The court rejected defendant's
argument that he could not have known that the source code was
not widely known when he found it on the Internet.  <u>Id.</u>  The
court relied on the fact that defendant knew the source code was
stolen ("jacked") and not widely available (others would have a
hard time finding it).

        Unlike <u>Genovese</u> where the defendant did not work at
Microsoft, but instead merely found the source code on the
Internet, defendant here was an insider with a secret clearance
at Boeing, and signed documents pledging to protect Boeing's
information from improper disclosure.  Defendant's lie about
being given permission to take documents home shows defendant
knew that he was not allowed to take the documents from Boeing,
another indicator they were not generally known.

        In the case cited by defendant, <u>United States v. Hsu</u>, 40
F.Supp.2d 623 (E.D. Penn. 1999), the court rejected the
defendant's claim that the "generally known" and "readily
ascertainable" portions of the trade secret definition were
vague.  40 F.Supp.2d at 629.  The court did so based on its
finding that the defendant knew he could not lawfully obtain the
technology he wanted; i.e., that the information was restricted
by its owner.  The court noted that the defendant had been told

12

the technology in questions was "proprietary" to its owner, could not be obtained via a license or joint venture due to cost, and would have to be obtained through a corrupt employee.  Id.

The concerns of that court, cited by defendant, that the terms "not generally known" and "readily ascertainable" were "vaporous" are unpersuasive for two reasons.  First, the basis for the court's concern stemmed from a hypothetical the court posed involving Hannibal Lecter and Little Mary Sunshine.  Id. Though perhaps an interesting intellectual exercise, a hypothetical is not the proper test for vagueness.  See Hess, 514 F.3d at 909 ("Accordingly, mere 'speculation about possible vagueness in hypothetical situations not before the [c]ourt' will not support a facial attack on a statute that is 'valid in the vast majority of its intended applications.'") citing Hill, 530 U.S. at 733.  A challenge to the vagueness of a statute "must be examined as applied to the defendant."  Jae Gab Kim, 449 F.3d at 942.  Defendant does not discuss any facts in this case that even suggest a vagueness problem.

Second, the court cited the rapid spread of information in the modern age, such as through the Internet, which made it difficult to know what is "generally known" at any given time. In fact, the argument cuts both ways.  What makes it easy to disseminate information also makes it easy to find information. In other words, the Internet makes it easy to publish information, but it also makes it just as easy to find that information.

Finally, as noted in Hsu, the concerns expressed by the court were mitigated by the fact that the EEA contains a scienter

requirement.  40 F.Supp.2d at 631, n. 8.  As discussed above, the double scienter requirement of § 1831 vitiates any concern over there being a sufficiently clear warning of the proscribed conduct, or the risk of arbitrary law enforcement.

**B.    The EEA's Reference to "Reasonable Measures" Taken to Protect Trade Secrets Is Not Unconstitutionally Vague**

At least three courts have rejected vagueness challenges to the "reasonable measures" portion of the trade secret definition of the EEA.  In <u>Hsu</u>, the court held that a statute is not void merely for using the word "reasonable."  40 F.Supp.2d at 628. The court noted that judges and juries are called upon routinely to decide what is reasonable.  The court cited the examples of the Fourth Amendment's ban on unreasonable searches, the provisions in 18 U.S.C. § 922(d)(8) which proscribe the sale of a firearm to a person whom the seller has "reasonable cause" to believe is engaged in conduct that would put an intimate partner in "reasonable fear" of bodily injury, and to the fact that the jury in that case would be applying a standard of beyond a reasonable doubt.  <u>Id.</u>  The court noted that the defendant had been told the technology in questions was "proprietary," could not be easily obtained, and would have to be obtained through a corrupt employee.  <u>Id.</u>  Based on these facts, the court found that "Hsu thus knew that BMS had taken many steps to keep its technology to itself, and therefore he will not be heard to quibble with the ductility of 'reasonable measures' as applied to him in this case."  <u>Id.</u>

In <u>Krumrei</u>, the defendant worked for a subcontractor that was assisting another company develop a new process for applying

14

1    hard coatings to certain types of surfaces.  258 F.3d at 536.  In

2    that case, the prime contractor took steps to safeguard the

3    technology.  Although the defendant was not an employee of the

4    prime contractor, but was instead an employee of a subcontractor

5    to another subcontractor, he was told of the confidential nature

6    of the work they were doing.  The court rejected a vagueness

7    challenge to reasonable measures, finding that the defendant "was

8    aware he was selling confidential information to which he had no

9    claim," knew that the information was proprietary, and that the

10   defendant "need not have been aware of particular security

11   measures taken" by the owner of the information.  258 F.3d at

12   539.

13        In Genovese, the court found that defendant knew that the

14   source code was proprietary to Microsoft and that someone had

15   stolen ("jacked") it.  409 F.Supp.2d at 258.  The court cited the

16   Krumrei decision and found that the defendant did not need to

17   know the "particular security measures" taken by Microsoft, so

18   long as the defendant "knew that the information was

19   proprietary."  Id. citing Krumrei, 258 F.3d at 539.

20        In this case, defendant (1) worked at Boeing and held a

21   secret clearance; (2) signed agreements to protect and not

22   disclose without authorization Boeing's proprietary information;

23   (3) stole documents bearing stamps indicating that the

24   information belonged to Boeing;[3] (4) was aware that access to

25

26        [3]  The lack of a restrictive stamps on some of the documents
     defendant stole does not defeat a claim of trade secret status.
27   As will be shown at trial, the totality of circumstances in this
     case will show both that Boeing took more than reasonable steps
28   to protect its trade secrets even without a restrictive stamp,
     and that defendant knew the unstamped documents were restricted.

                                     15

documents at Boeing was restricted to engineers working on a
given program who had a need to know; and (4) lied about having
permission to take the documents to his home.  Although the
government will produce far more evidence a trial regarding the
steps Boeing took to protect its information, and defendant's
knowledge of those steps, the facts set forth in the Indictment
show that defendant was aware he was taking without authorization
information that did not belong to him.  As in <u>Hsu</u>, defendant
cannot be heard to "quibble" about lack of notice as to what
constitutes "reasonable measures" as applied to him.  (Defendant
is free, of course, to argue at trial that the steps taken by
Boeing were not reasonable, but that is a separate issue from
whether the statute is unconstitutionally vague.)

**C.   The EEA's Reference to "Independent Economic Value" Is
       Not Unconstitutionally Vague**

Defendant argues that a "person of ordinary intelligence
such as Mr. Chung cannot reasonably be expected to know what
information has 'independent economic value' and what 'actual'
versus 'potential' 'economic value' means, where the 'value' set
forth . . . derives from 'not being generally known' and 'readily
ascertainable,' which . . . are also unconstitutionally vague."
Motion p. 10.  Notably, defendant's argument contains not a
single reference to any of the facts in this case.  Mere
speculation about possible difficulties in understanding words is
not the test for validity.  The test is to apply the terms to the
facts of this case.

First, defendant is not "a person of ordinary intelligence,"
but was a trained engineer with a secret clearance who had worked

at Rockwell/Boeing for more than thirty years.  One clue to defendant that the information had value was that he and his colleagues were being paid to produce it, often under multi-million dollar contracts with NASA and the Air Force.  Second, defendant signed agreements that he would protect all information belonging to Boeing.  Third, defendant stole documents that were stamped as proprietary to Boeing.  Fourth, defendant lied about having permission to take the documents.  Finally, the documents were responsive to requests from PRC officials for specific types of aerospace and defense technology.  Assuming that defendant's co-conspirators in the PRC were of "ordinary intelligence," they would not ask (and pay) defendant to clandestinely give them technology that lacked any value and could be found in open sources (i.e., was "generally known") or was readily ascertainable (i.e., the PRC could easily develop the same technology).

The concept of "independent economic value from not being generally known" is easily understood through an example.  The recipe for Coke has value to its owner from not being generally known because it allows the company to be the sole vendor of that drink.  If its recipe became generally known, others could step in and, without the research and development costs the company expended in creating and marketing the drink, sell Coke and deprive the company of market share.

The EEA does not require that the government prove a specific value for a trade secret, just that it has value that derives from not being generally known.  The issue of specific value only becomes relevant at sentencing.  (EEA violations are

1  sentenced using the fraud loss table of USSG § 2B1.1.)

2      In sum, as applied in this case, the terms "not generally

3  known," "not readily ascertainable," "reasonable measures," and

4  "independent economic value" provide "sufficiently definite

5  warning as to the proscribed conduct." Schales, 546 F.3d at 972.

6  "Perfect clarity and precise guidance" are not required. Id.

7  Defendant's arguments go to his perceived difficulty in

8  determining "whether the incriminating fact . . . [can be]

9  proved," not the "indeterminacy of precisely what that fact is."

10  Williams, 128 S.Ct. at 1846.  Defendant's arguments are that

11  elements such as "not generally known" or "reasonable measures"

12  may be - in his view - difficult to prove.  But the statute

13  itself gives ample notice of "precisely what [the] fact is" that

14  needs to be proved.  Also, the scienter requirement is additional

15  proof that the statute will not ensnare otherwise innocent

16  conduct.

17      **D.  The EEA Presents No Danger of Arbitrary Enforcement**

18      Defendant's argument concerning arbitrary enforcement

19  consists of one conclusory sentence: "The government's

20  application of the EEA charges against Mr. Chung is hopelessly

21  vague resulting in the ad hoc determination that Mr. Chung's

22  conduct is illegal."  Motion p. 11.  Defendant cites not a single

23  fact to support his argument.

24      This case is neither ad hoc nor arbitrary.  Defendant's home

25  and work space at Boeing were searched after a letter addressed

26  to defendant and his wife was found in the home of Chi Mak in

27  June 2006.  The letter was from a PRC official asking for

28  technology and promising payment.  Prior to the searches,

18

defendant was seen discarding newspapers in which he had hidden
export-controlled documents taken from the Shuttle Drawing System
at Boeing.  The search of defendant's home revealed more than
250,000 pages of documents from Boeing, more letters and tasking
lists from PRC officials, export-controlled documents, document
containing trade secrets, journals referring to undisclosed trips
to the PRC and contact with PRC officials, and a medal and pins
from PRC aircraft companies.  The government then submitted
documents for review to Boeing (the engineers reviewing the
documents were not told the reason why they were doing so) to
determine if the documents contained any information that was not
known outside of Boeing and that had value to Boeing from not
being generally known.  The government also interviewed Boeing
security personnel to determine what steps the company took to
protect the information defendant stole.  The investigation of
defendant lasted more than a year-and-a-half, from the discovery
of the letter at Chi Mak's home in June 2006, to the indictment
of defendant in early 2008.  The claim that the case against
defendant is ad hoc or arbitrary is not credible.  This is
particularly true given the double scienter requirement in § 1831
that allows conviction only on a finding beyond reasonable doubt
that defendant knowingly took trade secrets knowing they would
benefit a foreign government.

**E.   Section 371 Is Not Unconstitutionally Vague**

Defendant's argument that § 371 is vague is premised wholly
on his argument that the EEA's definition of trade secret is
vague.  Because the latter is not true, the former is not true
either.

19

1  **VI.   CONCLUSION**

2         For the foregoing reasons, defendant's motion to dismiss

3  should be denied.