# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>DONGFAN "GREG" CHUNG<br><br>　　　　Defendants. | Case No.: SACR 08-00024-CJC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNTS 1 THROUGH 9 OF THE INDICTMENT AS UNCONSTITUTIONALLY VAGUE** |

**INTRODUCTION**

　　Before the Court is Defendant Dongfan "Greg" Chung's motion to dismiss Counts 1 through 9 of the Indictment as unconstitutionally vague. Mr. Chung argues that 18 U.S.C. § 1831, the Economic Espionage Act of 1996 ("EEA"), is unconstitutionally vague as applied to him because it fails to adequately define the term "trade secret." Accordingly, Mr. Chung argues that the Counts of the Indictment that charge him with

violating the EEA and conspiracy to commit those violations must be dismissed. For the following reasons, Mr. Chung's motion to dismiss is DENIED.

**BACKGROUND**

Mr. Chung worked at Rockwell International ("Rockwell") and then Boeing, when Boeing acquired the space division of Rockwell. (Indictment ¶ 10.) Mr. Chung worked as a stress analyst on the forward fuselage section of the Space Shuttle from 1973 through 2002. (*Id.*) Mr. Chung also worked on the Space Shuttle as an independent contractor at Boeing from 2003 through 2006. (*Id.* ¶ 11.) The Indictment alleges that Mr. Chung, at the request of the government of the People's Republic of China ("PRC"), used his access as an engineer at Rockwell and Boeing to obtain trade secrets and provide them to the PRC. (*Id.* ¶¶ 21(a)-(d), 22.)

The Indictment identifies eight documents—several of which are marked as proprietary information—that contain the alleged trade secrets. (*Id.* ¶¶ 5, 25.) These trade secrets pertain to Boeing's Space Shuttle, Delta Rocket, and military cargo plane programs. (*Id.* ¶¶ 5, 7, 9.) Mr. Chung worked on the Space Shuttle program, but not the Delta Rocket or military cargo plane programs. (*Id.*) Mr. Chung did not have authorized access to documents pertaining to programs on which he did not work, but he did have secret clearance in connection with his work on the Space Shuttle program. (*Id.* ¶¶ 4, 6, 8, 13.)

As a condition of his employment, Mr. Chung signed numerous agreements stating that he would not use or disclose proprietary information or trade secrets without authorization. (*Id.* ¶¶ 14-18.) Mr. Chung also signed a statement that he returned all documents belonging to Boeing at the end of his employment there in 2002. (*Id.* ¶ 15.) Notwithstanding these assurances, the government alleges that Mr. Chung retained

thousands of pages of documents related to aerospace technology and defense in his home and, in response to specific requests from the PRC, Mr. Chung provided trade secrets to the PRC.  (*Id.* ¶ 22.)

**ANALYSIS**

A statute is presumed constitutional, and "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." *Flemming v. Nestor*, 363 U.S. 603, 617 (1960).  "To avoid being unconstitutionally vague, a penal statute must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *United States v. Schales*, 546 F.3d 965, 972 (9th Cir. 2008) (citing *Kolender v. Lawson*, 461 U.S. 352 (1983)).  " 'The Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' " *Id.* (citing *Hamling v. United States*, 418 U.S. 87, 111 (1974)).  Finally, a vagueness challenge outside the First Amendment context "must be examined as applied to the defendant." *United States v. Jae Grab Kim*, 449 F.3d 933, 942 (9th Cir. 2006).

The EEA, under which Mr. Chung is charged, provides:
(a) In general.--Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly--
>    (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret;

        (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret;

        (3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

        (4) attempts to commit any offense described in any of paragraphs (1) through (3); or

        (5) conspires with one or more other persons to commit any offense described in any of paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy, shall, except as provided in subsection (b), be fined not more than $500,000 or imprisoned not more than 15 years, or both.

18 U.S.C. § 1831. Section 1839 defines "trade secret" and owner as follows:

    (3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--

        (A) the owner thereof has taken reasonable measures to keep such information secret; and

>   (B) the information derives independent economic value, actual
>   or potential, from not being generally known to, and not being
>   readily ascertainable through proper means by, the public; and
> (4) the term "owner", with respect to a trade secret, means the person or
> entity in whom or in which rightful legal or equitable title to, or license in,
> the trade secret is reposed.

18 U.S.C. § 1839. The EEA's definition of trade secret is based on the definition provided in the Uniform Trade Secrets Act, which has been adopted in some form in forty-four states and the District of Columbia. *United States v. Hsu*, 155 F.3d 189, 195 n.7 (3d Cir. 1998).

The EEA is not unconstitutionally vague because the statute's definition of trade secrets provides fair notice to Mr. Chung of the conduct that is prohibited by the statute.[1] Mr. Chung argues that terms "not generally known to" and "not readily ascertainable through proper means," "reasonable measures," and "independent economic value, actual or potential," which are contained in the statute's definition of trade secret, are not adequately defined so as to provide a reasonable person with notice of their meaning.[2] Mr. Chung is mistaken.

First, a person of reasonable intelligence would know that the documents provided to the PRC were not "generally known" or "readily ascertainable." The

---

[1] It is also worth noting that statutes with scienter requirements are generally less susceptible to vagueness challenges. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."). The EEA has a double scienter requirement: a defendant must *knowingly* steal a trade secret *knowing* that it will benefit a foreign government.

[2] Mr. Chung also argues that the EEA's vagueness "lends itself to arbitrary enforcement." (Def.'s Mot. at 11.) However, the EEA neither poses the risk of arbitrary enforcement generally nor is the government's prosecution of Mr. Chung arbitrary. The government's Indictment includes serious allegations regarding Mr. Chung's passing of trade secret information to the PRC and his relationship to convicted felon Chi Mak, and there is no evidence that he has been arbitrarily selected for prosecution.

Indictment alleges that Mr. Chung knew that the information he provided to the PRC was proprietary, employees outside the given programs did not have access to that information, Mr. Chung held a secret clearance, and Boeing required Mr. Chung to sign numerous non-disclosure agreements. (Indictment ¶¶ 4-8, 13-18.) Finally, Mr. Chung allegedly lied about having permission to take documents to his home. (Indictment ¶ 23(e)-(l).) Based on the measures Boeing took to protect the information and the steps the PRC took to obtain the information, an ordinary person would know this information was not generally known or readily ascertainable.

Likewise, the term "reasonable measures" is not unconstitutionally vague. Mr. Chung was well aware of the many steps Rockwell and Boeing took to keep the documents identified in the Indictment confidential. Mr. Chung held a secret clearance, Mr. Chung signed numerous confidentiality agreements, many of the documents at issue were marked proprietary, and Mr. Chung knew that access to documents at Boeing was restricted to engineers working on given programs. (*Id.* ¶¶ 4-8, 13-18.) And again, Mr. Chung allegedly lied about having permission to take documents home with him. (*Id.* ¶ 23(e)-(l).)

Finally, the terms "independent economic value," "actual value," and "potential value" provide a reasonable person with notice of their meaning. Here, Mr. Chung had more than ample notice that the information contained in the documents was valuable. First, the United States government allegedly paid significant sums of money for the technology described in the documents. Moreover, Mr. Chung allegedly stole documents that were marked proprietary and then allegedly lied about having permission to take them home with him. (*Id.* ¶¶ 4-8, 23(e)-(l).) Finally, the PRC allegedly went to great lengths to obtain this

information, making numerous requests for Mr. Chung to secretly gather specific information.  (*Id.* ¶¶ 21-22.)

**CONCLUSION**

For the foregoing reasons, Mr. Chung's motion to dismiss Counts 1 through 9 of the Indictment as unconstitutionally vague is DENIED.

DATED:  April 13, 2009

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE