THOMAS P. O'BRIEN
United States Attorney
ROBB C. ADKINS
Assistant United States Attorney
Chief, Santa Ana Branch Office
GREGORY W. STAPLES
Assistant United States Attorney
California Bar Number: 155505
IVY A. WANG
Assistant Unites States Attorney
California Bar Number: 224899
     United States Courthouse
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3549
     Facsimile: (714) 338-3561
     E-mail address: ivy.wang@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. SA CR 08-024-CJC |
| Plaintiff, | ) |
| | ) GOVERNMENT'S OBJECTIONS TO |
| v. | ) DEFENDANT'S STATEMENT OF ELEMENTS |
| | ) |
| DONGFAN "GREG" CHUNG, | ) |
| Defendant. | ) |

The government submits its supplemental brief regarding the knowledge requirements of 18 U.S.C. § 1831.

Dated: June 8, 2009                          THOMAS P. O'BRIEN
                                             Unites States Attorney



                                             _____
                                             GREGORY W. STAPLES
                                             IVY A. WANG
                                             Assistant U.S. Attorneys

**I.  THE ECONOMIC ESPIONAGE ACT DOES NOT REQUIRE PROOF THAT DEFENDANT KNEW HE MISAPPROPRIATED A TRADE SECRET**

The government shares the Court's concern about the ensnarement of innocent conduct in EEA cases.  However, those concerns are allayed because the government must prove that a defendant knowingly took information that did not belong to him with the intent to benefit a foreign government.  This protects a person acting innocently.

Defendant proposes that the government be required to prove that defendant "Chung knew the information was a trade secret." This would require showing that the defendant knew that Boeing took steps to protect the trade secret information and that the information had value to Boeing from not being publicly known. This standard is not required under the statute.  It would establish a willfulness requirement (which Congress explicitly rejected), and unnecessarily limit the application of the Economic Espionage Act.

Significantly, the statute already includes a heightened intent standard and ensures that a criminal conviction does not result by accident or mistake.  Section 1831 requires the government to prove three elements:

1.  The defendant intended or knew his actions would benefit a foreign government, foreign instrumentality, or foreign agent;[1]

2.  The defendant knowingly stole, or without authorization

---

[1] In a parallel element under Section 1832, the government must show the defendant intended to injure the owner of the trade secret.

        appropriated, took, carried away, possessed or concealed, or by fraud, artifice, or deception obtained a trade secret; and

3. The information was, in fact, a trade secret.

These elements - proof that a defendant wrongly took something that did not belong to him knowing it would benefit another country - protects someone acting through mistake or accident. "It is not necessary that the government prove that the defendant knew his or her actions were illegal, rather the government <u>must prove that the defendant's actions were not authorized by the nature of his or her relationship to the owner of the property and that the defendant knew or should have known that fact</u>." <u>See</u> H.R. Rep. No. 104-788, at 12 (1996)(emphasis added), attached as Exhibit 1.

By this language, Congress did not require the government to show that the defendant specifically was aware of each element of the definition of a trade secret under Section 1839(3),[2] as the

---

[2] Section 1839(3), defining trade secret, provides:

(3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; and
(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the

defense argues.  If the Court is not inclined to use the government's second element as drafted, the government urges the Court to use the emphasized language from the House Report in applying the second element.  That is all that is required.

The plain language of § 1831, does not support an argument that, in addition to a knowing theft and intent to benefit another country, the government must prove that defendant knew the information he stole was a trade secret.  The pertinent part of § 1831 states the following:

> (a) In general.  Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly–
>
>> (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret;
>
> *******
>
>> (3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization.

Neither subsection (1) or (3) apply the term "knowing" to the term trade secret.

By comparison, 18 U.S.C. § 1546(a), which pertains to fraudulent immigration documents states as follows: "Whoever knowingly forges, counterfeits, alters, or falsely makes any . . . document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States

---

   public.

4

. . . <u>knowing</u> it to be forged, counterfeited, altered, or falsely made. . . ." 18 U.S.C. 1546(a) (emphasis added). Congress added a second use of the word "knowing" to ensure that the knowledge requirement applied to the object of the defendant's actions. The Supreme Court has recognized that, when Congress adopts two differing structures, "it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." <u>Russello v. United Sates</u>, 464 U.S. 16, 23 (1983). The Court made a conscious choice not to "ascribe this difference to a simple mistake in draftsmanship." <u>Id.</u> Thus, the fact that Congress left out a third instance of "knowingly" in the EEA cuts against a requirement that a defendant knew what he stole for the benefit of a foreign government met the legal definition of a trade secret.

    The defense fails to cite any authority for its position that the government must prove defendant acted knowingly to benefit the PRC, knowingly misappropriated information, and knew the information was a trade secret. In contrast, the Sixth Circuit has held that the "defendant need not have been aware of the particular security measures taken by [trade secret owner] Wilsonart. Regardless of his knowledge of those specific measures, defendant knew the information was proprietary." <u>United States v. Krumrei</u>, 258 F.3d 535, 539 (6th Cir. 2001) (affirming denial of motion to dismiss indictment as void for vagueness). In other words, the defendant knowingly misappropriated property (or proprietary information) belonging to someone else without permission. <u>See also</u> <u>United States v. Genovese</u>, 409 F.Supp.2d 253, 257 (S.D.N.Y. 2005)(rejecting

argument that defendant who found Microsoft source code on Internet could not have known what security measures Microsoft took, or whether the code was publicly known, where defendant knew the code was "jacked" or stolen).

The only case that the government has found to the contrary is United States v. Nosal, 2009 WL 981336 (N.D. Cal. April 13, 2009). In that case, the court rejected the defendant's argument that the government must prove knowledge of illegality based on arguments that the EEA was not designed to punish competition and that the definition of "trade secret" in the EEA is vague and under-defined. Referring to Krumrei and United States v. Hsu, 40 F.Supp.2d 623 (E.D. Penn. 1999), the court in Nosal stated that those cases "make plain it is the knowledge of trade secrets, not the knowledge of illegal behavior, that the EEA requires."[3] Id. However, the court later held that "the question here . . . is whether the government's allegations that Nosal knew the source list information and data he took, copied and downloaded from KFI's computer system . . . was proprietary to KFI and that Nosal knowingly stole [it anyway]." Id. (emphasis added). It is the court's second characterization that is correct.

What the government must prove is that defendant knew the

---

[3] The court in Nosal cites Hsu as holding that the EEA requires proof that a defendant know that stolen or misappropriated information was in fact a trade secret. Nosal, 2009 WL 981336 *3. In fact, Hsu rejected a void-for-vagueness challenge to the EEA's definition of trade secret by finding "as applied" in that case because the defendant knew that the information he sought was not generally known and could not be acquired through proper channels. 40 F.Supp.2d at 630-31. The opinion in Hsu does not address the elements of the offense.

1  information he possessed was stolen or wrongly appropriated;
2  i.e., it was proprietary information belonging to another.  This
3  is not a matter of semantics.  All trade secrets are proprietary,
4  but not all proprietary information is a trade secret.  Black's
5  Law Dictionary defines "proprietary" as "Belonging to ownership .
6  . . relating to a certain owner or proprietor.  Made and marketed
7  by a person or persons having the exclusive right to manufacture
8  and sell such. . . ."  Black's Law Dictionary, Abridged 5th ed.,
9  1985.  The EEA's definition of trade secret includes the same
10 exclusive rights of ownership, but adds the additional elements
11 of reasonable security measures and value from not being
12 generally known to the public.  These are not necessary for an
13 item to be considered proprietary.  As stated in Krumrei, what
14 needs to be shown is that a defendant knew the information was
15 proprietary; i.e., it belonged to another and was stolen or
16 wrongly appropriated.  258 F.3d at 539.  The knowledge of the
17 theft or wrongful appropriation prevents the innocent from being
18 ensnared.
19     On the third element of the offense, Congress already
20 considered and established the proof necessary for a trade
21 secret.  In the definition of a trade secret, Congress imposed an
22 *objective* standard.  Congress did not adopt, as the defense
23 requests, a subjective knowledge standard based on what the
24 defendant knew and understood about whether the elements of the
25 trade secret were met or not.  As noted in the House Report:
26     The definition of trade secret requires that the owner of
27     the information must have taken objectively reasonable and
28     active measures to protect the information from becoming

known to unauthorized persons. If the owner fails to attempt to safeguard his or her proprietary information, no one can be rightfully accused of misappropriating it. H.R. Rep. No. 104-788, at 7 (1996). The test is an objective one and not evaluated from the view or understanding of the defendant. If the government fails to meet this objective standard, despite proving a theft or wrongful taking and intent to benefit a foreign government, no conviction would apply.

The defendant's proposed additional "defendant's knowledge" element would require the government to prove something that Congress did not intend and would be difficult to establish. This would unnecessarily narrow the scope of cases covered by the Economic Espionage Act. The government would have to show what the defendant specifically knew about whether the information met each element of the trade secret definition. For some trade secrets, a company may limit access to the information on a need to know basis. Only those with permitted access to the material would be fully aware of the restrictions. In such cases, defendant's standard would require the government to prove that a defendant is aware of protective measures that may not have applied to him.

An analogy shows that the standard advanced by the defense is not what Congress intended. Assume a visitor or contractor to a company during a tour sees something of value. The visitor does not know specifically what steps the company has taken to protect it. The visitor sees property that does not belong to him. Opportunistically, the visitor knowingly misappropriates the information and shares it with others, intending to benefit

another country.  By the nature of his relationship with the trade secret owner, the defendant is aware the property belongs to someone else and is taken without permission.  See Krumrei, 258 F.3d at 539; Genovese, 409 F.Supp.2d at 257.  The defendant is charged and during trial asserts a legal technicality:  the government has failed to show what was in his mind, specifically, whether he was actually aware of each of the sub-elements of the trade secret definition under Section 1839(3), including his knowledge of the trade secret owner's reasonable measures.  All the other elements are otherwise met in the case.  On this technicality, as the defense urges here, the defendant would not be convicted, even where the knowing misappropriation was completed with the intent to benefit another country or company.

    To avoid this outcome, Congress imposed an objective standard for proof of a trade secret, not a subjective standard based on what a defendant knew.

## II. CONCLUSION

    For the foregoing reasons, the government believes the elements of an EEA offense do not require the government to prove that defendant knew the information he stole met the definition of a trade secret.